# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ALEXANDER CLIFFORD, individually and
on behalf of all others similarly situated,

*Plaintiff*,

v.

BIBOX GROUP HOLDINGS LIMITED,
BIBOX TECHNOLOGY LTD., BIBOX
TECHNOLOGY OÜ, WANLIN "ARIES"
WANG, JI "KEVIN" MA, AND JEFFREY
LEI,

*Defendants*.

Case No. 1:20-Cv-02807-DLC

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel for Defendants*

i

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND.................................................................................... 5

ARGUMENT ........................................................................................................ 6

I.    Plaintiff Lacks Standing to Pursue Claims Related to the Sale of Any Non-BIX
      Tokens...................................................................................................................6

II.   Plaintiff Failed to Allege Domestic Transactions Subject to the Securities Laws. ............7

III.  Plaintiff Has Failed to State a Cause of Action under Rule 12(b)(6) for Any of His
      Federal Claims. ..................................................................................................10

      A.    The SAC fails to state a claim because Plaintiff's claims against all
            Defendants are barred by the statute of limitations. ..............................11

            1.    Plaintiff's claims under Section 12(a)(1) against all defendants are
                  untimely. ....................................................................................11

            2.    Plaintiff's claims under Section 12(a)(2) & 29(b) are also untimely.........16

            3.    Plaintiff's Illinois Blue Sky Law claims are untimely.............................17

      B.    The SAC fails to state a claim under Section 12 because Defendants are
            not "Statutory Sellers" within the meaning of the Statute. ...................19

      C.    Plaintiff has failed to state a claim under the Illinois Blue Sky State Law
            for the same reason Plaintiff's Section 12 of the Securities Act claims
            fail—Defendants are not statutory sellers............................................22

      D.    Plaintiff has failed to state claims under Section 29(b) of the Exchange Act
            because he has failed to allege that he is in contractual privity with any
            Defendant. ...................................................................................22

      E.    Plaintiff has not alleged an actionable misstatement under Section
            12(a)(2). ......................................................................................23

      F.    Plaintiff's control person claims fail too..............................................24

IV.   Dismissal Is Appropriate under Rule 12(b)(2) for Certain Defendants Because
      Plaintiff Has Failed to Allege a Basis for the Exercise of Personal Jurisdiction
      over the Defendants ...............................................................................25

V.    Alternatively, the Case Should be Dismissed Pursuant to the User Agreement
      Forum Selection Clause or Directed to Arbitration in Singapore.....................28

CONCLUSION...................................................................................... 29

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012)......................................................................................3, 8, 9

*Allen v. Credit Suisse Sec. (USA) LLC*,
    895 F.3d 214 (2d Cir. 2018)..........................................................................................10

*Alpha Capital Anstalt v. Oxysure Sys., Inc.*,
    216 F. Supp. 3d 403 (S.D.N.Y. 2016).....................................................................16, 17

*Asahi Metal Indus. Co. v. Superior Court of California*,
    480 U.S. 102 (1987)......................................................................................................26

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................10

*Barton v. Peterson*,
    733 F. Supp. 1482 (N.D. Ga. 1990) .............................................................................12

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)..........................................................................................27

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)......................................................................................................27

*Capri v. Murphy*,
    856 F.2d 473 (2d Cir.1988)...........................................................................................19

*Celsion Corp. v. Stearns Mgmt. Corp.*,
    157 F. Supp. 2d 942 (N.D. Ill. 2001) ...........................................................................17

*Charles Schwab Corp. v. Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018).................................................................................25, 26, 27

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)............................................................................................8

*Clifford, et al. v. Bibox Group Holdings Limited et al.*,
    Case No. 1:20-cv-02807-DLC (S.D.N.Y. Apr. 3, 2020) ...............................................1

*Clifford, et al. v. KayDex Pte. Ltd. et al.*,
    Case No. 1:20-cv-02812-RA (S.D.N.Y. Apr. 3, 2020)..................................................1

*Clifford, et al. v. Status Research & Development GmbH et al.,*
   Case No. 1:20-cv-02815-NRB (S.D.N.Y. Apr. 3, 2020) ..........................................1

*Clifford, et al. v. Tron Foundation et al.,*
   Case No. 1:20-cv-02804-VSB (S.D.N.Y. Apr. 3, 2020) ..........................................1

*Cook v. Avien, Inc.,*
   573 F.2d 685 (1st Cir. 1978) ............................................................................12

*Credit Suisse First Bos. Corp. v. ARM Fin. Grp., Inc.,*
   No. 99 CIV 12046 WHP, 2001 WL 300733 (S.D.N.Y. Mar. 28, 2001) ...........................2, 19

*Crypto Asset Fund, LLC v. MedCredits, Inc.,*
   2020 WL 1506220 (S.D. Cal. Mar. 30, 2020) ......................................................28

*DeLeonardis v. Berg,*
   No. 97 CV 1655(NG), 1998 WL 760338 (E.D.N.Y. Sept. 15, 1998), *aff'd*, 199
   F.3d 1321 (2d Cir. 1999) ................................................................................12

*In re Deutsche Telekom AG Secs. Litig.,*
   2002 WL 244597 (S.D.N.Y. Feb. 20, 2002)..........................................................20

*DiStefano v. Carozzi N. Am., Inc.,*
   286 F.3d 81 (2d Cir. 2001)...............................................................................25

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.,*
   553 F.3d 187 (2d Cir. 2009)..............................................................................24

*Ellison v. Am. Image Motor Co., Inc.,*
   36 F. Supp. 2d 628 (S.D.N.Y. 1999)...................................................................24

*Ellul v. Congregation of Christian Bros.,*
   774 F.3d 791 (2d Cir. 2014)..............................................................................13

*Emerson v. Mut. Fund Series Tr.,*
   393 F. Supp. 3d 220 (E.D.N.Y. 2019) .................................................................25

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.,*
   873 F.3d 85 (2d Cir. 2017)...............................................................................24

*Frati v. Saltzstein,*
   No. 10 CIV. 3255 (PAC), 2011 WL 1002417 (S.D.N.Y. Mar. 14, 2011)..........................4, 22

*Fteja v. Facebook, Inc.,*
   841 F. Supp. 2d 829 (S.D.N.Y. 2012)..................................................................28

*In re Gas Reclamation, Inc. Sec. Litig.,*
   733 F. Supp. 713 (S.D.N.Y. 1990)......................................................................20

*Glob. Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006).............................................................................................28

*Goldberg v. 401 North Wabash Venture LLC*,
  2010 WL 1655089 (N.D. Ill. Apr. 22, 2010) ...................................................................18

*Gucci Am., Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014)............................................................................................27

*Hess v. I.R.E. Real Estate Income Fund, Ltd.*,
  629 N.E.2d 520 (Ill. App. Ct. 1993) .............................................................................2, 7

*Holsworth v. BProtocol Foundation, et al.*,
  Case No. 1:20-cv-02810-AKH (S.D.N.Y. Apr. 3, 2020).................................................1

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
  326 U.S. 310 (1945).........................................................................................................26

*Jones v. Party City Holdco, Inc.*,
  230 F. Supp. 3d 185 (S.D.N.Y. 2017).............................................................................24

*Katz v. Amos Treat & Co.*,
  411 F.2d 1046 (2d Cir. 1969)....................................................................................13, 14

*King Cty., Wash. v. IKB Deutsche Industriebank AG*,
  769 F. Supp. 2d 309 (S.D.N.Y. 2011).............................................................................26

*Komanoff v. Mabon, Nugent & Co.*,
  884 F. Supp. 848 (S.D.N.Y. 1995)..................................................................................22

*Lee, et al. v. Binance, et al.*,
  Case No. 1:20-cv002803-ALC (S.D.N.Y. Apr. 3, 2020).................................................1

*Lesser v. TD Bank, N.A.*,
  463 F. Supp. 3d 438 (S.D.N.Y. 2020).............................................................................29

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
  902 F. Supp. 2d 329 (S.D.N.Y. 2012), *aff'd sub nom. IBEW Local Union No.
  58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*,
  783 F.3d 383 (2d Cir. 2015)............................................................................................11

*Mahon v. Ticor Title Ins. Co.*,
  683 F.3d 59 (2d Cir. 2012)..........................................................................................7, 22

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000)..............................................................................................6

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007)....................................................................30

*McGowan Investors LP v. Frucher*,
    481 F.Supp.2d 405 (E.D.Pa.2007) ........................................................23

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    Nos. 09 MD 2030(LAP) Civ. 0124(LAP), 2012 WL 1994707 (S.D.N.Y. June
    4, 2012) ...................................................................................................11

*In re Merrill Lynch Ltd. P'ships Litig.*,
    154 F.3d 56 (2d Cir. 1998)......................................................................16

*Midamines SPRL Ltd. v. KBC Bank NV*,
    No. 12 Civ. 8089 (RJS), 2014 WL 1116875 (S.D.N.Y. Mar. 18, 2014) ................................29

*Milan v. Wertheimer*,
    808 F.3d 961 (2d Cir. 2015).....................................................................10

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010)..........................................................3, 19, 23

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247, 130 S. Ct. 2869 (2010) .............................................2, 8, 9

*In re National Century Fin. Enterprises, Inc.*,
    845 F. Supp. 2d 828 (S.D. Ohio 2012) ...................................................25

*Nolfi v. Ohio Kentucky Oil Corp.*,
    675 F.3d 538 (6th Cir. 2012) ...................................................................12

*O'Shea v. Littleton*,
    414 U.S. 488 (1974).............................................................................7, 22

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015)............................................................................23, 24

*Ontario Ltd. v. Zurich Cap. Mrkts., Inc.*,
    249 F.Supp.2d 974 (N.D. Ill. 2003) ........................................................18

*Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*,
    763 F.3d 198 (2d Cir. 2014)..................................................................9, 10

*Pell v. Weinstein*,
    759 F. Supp. 1107 (M.D. Pa. 1991), *aff'd*, 961 F.2d 1568 (3d Cir. 1992) ............................12

*Pinter v. Dahl*,
    486 U.S. 622 (1988)................................................................... *passim*

*Pollack v. Laidlow Holdings, Inc.*,
  No. 90 Civ. 5788 (DLC), 1995 WL 261518 (S.D.N.Y. May 3, 1995) .................................. 14

*Rayner v. E\*TRADE Fin. Corp.*,
  248 F. Supp. 3d 497 (S.D.N.Y. 2017) ................................................................................... 10

*Reshal Assocs., Inc. v. Long Grove Trading Co.*,
  754 F. Supp. 1226 (N.D.Ill.1990) (Rovner, J.) .................................................................. 17

*In re Rexplore, Inc. Sec. Litig.*,
  671 F. Supp. 679 (N.D. Cal. 1987) ...................................................................................... 13

*Richards v. Direct Energy Servs., LLC*,
  915 F.3d 88 (2d Cir. 2019) ................................................................................................... 22

*In re Royal Bank of Scotland Group PLC Sec. Litig.*,
  765 F. Supp. 2d 327 (S.D.N.Y. 2011) .................................................................................... 8

*SEC v. Revelation Capital Mgmt., Ltd.*,
  246 F. Supp. 3d 947 (S.D.N.Y. 2017) .................................................................................... 9

*SEC v. W.J. Howey Co.*,
  328 U.S. 293 (1946) .............................................................................................. 14, 15, 16, 17

*Shain v. Duff & Phelps Credit Rating Co.*,
  915 F. Supp. 575 (S.D.N.Y. 1996) ....................................................................................... 20

*In re Smart Techs., Inc. S'holder Litig.*,
  295 F.R.D. 50 (S.D.N.Y. 2013) ............................................................................................ 22

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................................................................ 7

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018) ................................................................................................. 26

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
  No. 00 CIV. 8058(NRB), 2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) .............................. 20

*Strubel v. Comenity Bank*,
  842 F.3d 181 (2d Cir. 2016) ............................................................................................... 2, 7

*Teva Pharm. Indus. Ltd. v. Deutsche Bank Sec. Inc.*,
  No. 09 Civ. 6205(AKH), 2010 WL 6864006 (S.D.N.Y. Dec. 14, 2010) .............................. 12

*Walden v. Fiore*,
  571 U.S. 277 (2014) ....................................................................................................... 26, 27

*Weiss v. Altholtz,*
    No. 10 C 02609, 2011 WL 4538459 (N.D. Ill. Sept. 29, 2011).........................................16, 17

*Wheaten v. Mathews Holmquist & Associates, Inc.,*
    No. 94 C 1134, 1995 WL 12523 (N.D. Ill. Jan 10, 1995) ...................................................4, 22

*Williams v. KuCoin, et al.,*
    Case No. 1:20-cv-02806-GBD-RWL (S.D.N.Y. Apr. 3, 2020)...............................................1

*Williams v. Quantstamp, Inc. et al.,*
    Case No. 1:20-cv-02813-LAP (S.D.N.Y. Apr. 3, 2020)........................................................1

*Williams, et al. v. Block.One,et al.,*
    Case No. 1:20-cv-02809-LAK (S.D.N.Y. Apr. 3, 2020)........................................................1

*Williams, et al. v. HDR Global Trading Limited, et al.,*
    Case No.1:20-cv002805-ALC (S.D.N.Y. Apr. 3, 2020)........................................................1

*Wilson v. Saintine Exploration and Drilling Corp.,*
    872 F.2d 1124 (2d Cir.1989).........................................................................................19

*Zhang v. Civic Technologies, Inc., et al.,*
    Case No. 1:20-cv-02811-AT (S.D.N.Y. Apr. 3, 2020).........................................................1

**Statutes**

15 U.S.C. § 77e.............................................................................................................................19

15 U.S.C. § 77l.............................................................................................................................19

15 U.S.C. § 77m................................................................................................................11, 12, 16

Exchange Act Section 20(a)..........................................................................................................24

Exchange Act Section 29(b) ..........................................................................................4, 16, 22, 23

Ill. Comp. Stat. Ann. 5/13(B)......................................................................................................17

**Other Authorities**

Investor Bulletin: Initial Coin Offerings, SEC, July 25, 2015,
    https://www.sec.gov/oiea/investor-alerts-and-bulletins/ib_coinofferings ..............................15

Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act
    of 1934: The Dao, SEC, Release No. 81207 at 17-18 (July 25, 2017), available
    at https:// www.sec.gov/litigation/investreport/34-81207.pdf; ................................................15

Statement Regarding SEC Staff Views, Sept. 13, 2018 available at
    https://www.sec.gov/news/public-statement/statement-clayton-091318................................14

Defendants Bibox Group Holdings Limited ("Bibox Group"), Bibox Technology Ltd and Bibox Technology OÜ[1] ("Bibox Technology," and collectively with Bibox Group, the "Bibox Defendants"), Wanlin Wang, Ji Ma, and Zhen Lei (collectively, the "Individual Defendants"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion (the "Motion") to dismiss the Second Amended Complaint (the "SAC") pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure and respectfully state as follows:

## PRELIMINARY STATEMENT

This securities class-action is one of eleven substantially similar cases filed[2] by the same counsel on the same day in this District, each alleging that certain cryptoassets—in this case, digital tokens—were unregistered securities that were promoted and sold by certain individuals and entities. Plaintiff alleges that Defendants "promoted, offered, and sold six digital tokens, BIX, EOS, TRX, OMG, LEND, and ELF (together the "Tokens") throughout the United States, through [an] online exchange (as to all the Tokens) and through its initial coin offering ("ICO") of BIX, without registering as an exchange or broker-dealer, and without a registration statement in effect for the securities it was selling, in violation of federal and state securities laws." [SAC at ¶ 1.]

---

[1] Defendants Bibox Technology Ltd and Bibox Technology OU are the same entity. *See* Declaration of Haixia Shi ("Shi Decl.") at ¶ 2].

[2] On April 3, 2020, Alexander Clifford, Plaintiff in this Action, personally filed four class actions: (1) *Clifford, et al. v. Tron Foundation et al.*, Case No. 1:20-cv-02804-VSB (S.D.N.Y. Apr. 3, 2020); (2) *Clifford, et al. v. Bibox Group Holdings Limited et al.*, Case No. 1:20-cv-02807-DLC (S.D.N.Y. Apr. 3, 2020); (3) *Clifford, et al. v. KayDex Pte. Ltd. et al.*, Case No. 1:20-cv-02812-RA (S.D.N.Y. Apr. 3, 2020); and (4) *Clifford, et al. v. Status Research & Development GmbH et al.*, Case No. 1:20-cv-02815-NRB (S.D.N.Y. Apr. 3, 2020). On the same day, Plaintiff's counsel also filed the following cases: (1) *Lee, et al. v. Binance, et al.*, Case No. 1:20-cv-02803-ALC (S.D.N.Y. Apr. 3, 2020); (2) *Williams, et al. v. HDR Global Trading Limited, et al.*, Case No.1:20-cv-02805-ALC (S.D.N.Y. Apr. 3, 2020); (3) *Williams v. KuCoin, et al.*, Case No. 1:20-cv-02806-GBD-RWL (S.D.N.Y. Apr. 3, 2020); (4) *Williams, et al. v. Block.One ,et al.*, Case No. 1:20-cv-02809-LAK (S.D.N.Y. Apr. 3, 2020); (5) *Holsworth v. BProtocol Foundation, et al.*, Case No. 1:20-cv-02810-AKH (S.D.N.Y. Apr. 3, 2020); (6) *Zhang v. Civic Technologies, Inc., et al.*, Case No. 1:20-cv-02811-AT (S.D.N.Y. Apr. 3, 2020); and (7) *Williams v. Quantstamp, Inc. et al*., Case No. 1:20-cv-02813-LAP (S.D.N.Y. Apr. 3, 2020).

Plaintiff's SAC is fatally and facially defective.  In sum, the SAC, despite its 300-page length, provides virtually no information about Plaintiff's purchase of the Tokens or of any contact, direct or indirect, between the Plaintiff and the Defendants. In fact, Plaintiff does not even claim that he purchased BIX from the Bibox Defendants, as opposed to in an over-the-counter or secondary market transaction.  He does not claim that his transactions in BIX, a foreign token traded on a foreign exchange operated by foreign entities, are domestic transactions.  In fact, Plaintiff offers no allegations of any kind about the circumstances or location of either of his two alleged purchases of the BIX Token, which, according to Plaintiff, took place the year after the ICO. Finally, Plaintiff does not even allege that he purchased or had any transactions of any kind in the other five Tokens. These pleading failures require that the SAC be dismissed with prejudice.

First, as indicated above, Plaintiff lacks standing for a substantial portion of his claims: Plaintiff has not alleged that he purchased, or engaged in any transactions related to, five of the Tokens.  *See Strubel v. Comenity Bank*, 842 F.3d 181, 187-188 (2d Cir. 2016) (explaining that standing requires injury in fact and a causal connection between that injury and the complained-of conduct); *Hess v. I.R.E. Real Estate Income Fund, Ltd.*, 629 N.E.2d 520 (Ill. App. Ct. 1993) (plaintiff lacked standing to sue defendants with whom she never dealt) (*citing Glazewski v. Coronet Insurance Co.*, 483 N.E.2d 1263 (Ill. 1985)).  As such, as to all causes of action in the SAC, Plaintiff, at most, only has standing to pursue alleged claims related to BIX.

Second, Plaintiff has not rebutted the presumption against the extraterritorial application of the federal securities laws under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2869 (2010). By his own allegations, Plaintiff's claims relate to the sale of a foreign asset on a foreign exchange by foreign defendants. Plaintiff has failed to allege that any of his Token

purchases are domestic transactions subject to the securities laws; instead, only offering that he is United States citizen.  But that allegation, by itself, is wholly insufficient.  *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (finding that "citizenship or residency does not affect where a transaction occurs."). Simply put, the SAC is conspicuously silent about where, from whom, or how Plaintiff purchased this asset.  That silence is fatal to each of his federal claims.

Third, the federal claims are untimely on their face, which all provide for a one-year statute of limitations. Plaintiff last allegedly purchased BIX on October 27, 2018, and last allegedly sold BIX on December 11, 2018, well over a year before the initial filing of this action on April 3, 2020. As explained below, by his own allegations and admissions, Plaintiff learned no additional *facts* after that date, and thus those claims that apply a so-called discovery would still be time barred.  Similarly, Plaintiff's claim under Illinois's Blue Sky Law (where Plaintiff resides) fails because Plaintiff failed to provide timely notice of his rescission as required by the statute.

Fourth, Plaintiff failed to state a claim under Section 12(a)(1) and 12(a)(2) of Securities Act because he has not alleged that defendants are statutory sellers. In *Pinter v. Dahl*, the United States Supreme Court defined a statutory seller as one who must have either (1) passed title of the security to the plaintiff; or (2) successfully solicited the purchase motivated at least in part by his own financial interest. 486 U.S. 622, 642, 647; *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (*quoting Pinter*, 486 U.S. at 642, 647).  Plaintiff fails to allege facts sufficient to meet either of those prongs as he has not alleged that he purchased anything from, or had any direct contact with, Bibox or any other defendant. For the same reason,

Plaintiff's Illinois state claims must also fail. *See Wheaten v. Mathews Holmquist & Associates, Inc.*, No. 94 C 1134, 1995 WL 12523 (N.D. Ill. Jan 10, 1995).

Fifth, for the same reasons, Plaintiff has failed to state claims under Section 29(b) of the Exchange Act: he has not alleged that he is in contractual privity with Bibox. *See Frati v. Saltzstein*, No. 10 CIV. 3255 (PAC), 2011 WL 1002417, at *5 (S.D.N.Y. Mar. 14, 2011) ("To establish a violation of Section 29(b), the plaintiffs must show that (1) the contract involved a prohibited transaction, (2) [they are] in contractual privity with the defendant[s], and (3) [they are] in the class of persons the Act was designed to protect.").

Sixth, Plaintiff has not alleged an actionable misstatement under Section 12(a)(2) of the Securities Act.  Plaintiff's purported misstatements center on his allegation that Defendants stated that the Tokens are not securities.  [SAC at 119.]  However, whether the Tokens are securities or not is a question of law, and the Defendants' opinion as to the status of the law cannot be construed as a misstatement of fact.[3]

Seventh, the SAC should be dismissed for lack of personal jurisdiction for certain defendants because the Plaintiff fails to allege *any* facts to support the exercise of jurisdiction over Defendants Ma, Lei, and Bibox Technology.

Finally, in the alternative, if Plaintiff bought BIX from the Bibox Exchange (defined below), he would have been required to execute a User Agreement requiring Plaintiff to either proceed to arbitration in Singapore or sue where the Defendants reside. Those contractual provisions should be given full force and effect.

---

[3] Further, because there are no underlying primary violations of securities laws, Plaintiff's federal and state law claims for control person liability must also be dismissed.

## FACTUAL BACKGROUND

Bibox Technology Ltd. is a company incorporated in the Republic of Estonia, and operates the website https://www.bibox.com, which is a platform dedicated to the transaction of digital assets and the provision of related services (the "Bibox Exchange"). [*See* Shi Decl. at Ex. A, Initial User Agreement, at preamble.]  Defendant Bibox Group Holdings Limited is a British Virgin Islands company. [SAC at ¶ 19.] The Individual Defendants, who are alleged to be co-founders of Bibox, are all Chinese citizens and residents.  [*See* Declaration of Ji Ma ("Ma Decl.")[4] at ¶ 4; Declaration of Zhen Lei ("Lei Decl.") at ¶ 4; Declaration of Wanlin Wang ("Wang Decl.") at ¶ 3.]  With the exception of Mr. Wang, the Individual Defendants have never been to the United States and have no assets here.  [*See* Ma Decl. at ¶ 5; Lei Decl. at ¶ 5.]  Mr. Wang currently resides in China, and was only in the United States for temporarily, departing on December 6, 2018 with no intention of returning to the United States. [*See* Wang Decl. at ¶ 4.]

The BIX Token (BIX) is an ERC20-based token that was offered for sale by Bibox in October 2017, in an ICO.  [SAC at 17.]  The Bibox Exchange was launched in 2017. In 2017 and 2018, according to the Complaint, ELF, LEND, TRX, OMG and EOS Tokens were listed on the Bibox Exchange.  On June 10, 2018, and October 27, 2018, Plaintiff alleges to have purchased BIX from unknown persons and by unknown means.  [SAC at Appendix A.] Notably, the Bibox Defendants have found no evidence that Plaintiff purchased or sold BIX on the Bibox Exchange. [Shi Decl. at ¶ 9.]  Importantly, a purchase or sale of BIX by a user triggers a record of that user in the Bibox Defendants' books and records.  [*Id*. at ¶ 9.]  No such record can be located for Plaintiff.  [*Id*.]  And, Plaintiff has not alleged here that he ever purchased any of the other Tokens. In fact, the sum total of the information about his purchases is contained in Appendix A of the SAC:

---

[4] The Declarations of the Individual Defendants are in both English and Chinese.

**Appendix A**
**Alexander Clifford's Transactions in BIX on Bibox**

| Date | Market | Type | Total | Price |
|---|---|---|---|---|
| 2018-06-10 | BIX/BTC | BUY | 9417.03 | 1.999499 |
| 2018-10-27 | BIX/BTC | BUY | 176.042 | 0 |
| 2018-12-11 | BIX/BTC | SELL | 9591.342 | 0.48090501 |

On April 3, 2020, nearly three years after the ICO and a year and a half after Plaintiff's purported purchases, Plaintiff filed his original Complaint, commencing this action.

Every purchaser of Tokens on the Bibox Exchange must execute a User Agreement, which is a so-called "clickwrap" agreement.  [*See* Shi Decl. at ¶8.]  The User Agreement that was in effect at the time of Plaintiff's purported  purchases requires Plaintiff to bring any action against the Defendants in the place where Defendants are domiciled.  [*See* Shi Decl. at Ex. A.]  Furthermore, a later version of the User Agreement that was in effect at the time of Plaintiff's purported sale requires mandatory arbitration of any disputes in Singapore.  [*See* Shi Decl. at Ex. B.]  At the time of Plaintiff's purported transactions, the BIX Token was available on the secondary market, from over-the-counter sources, and other exchanges and channels for purchase and sale.  [*Id.* at ¶10.]

**ARGUMENT**

**I.    Plaintiff Lacks Standing to Pursue Claims Related to the Sale of Any Non-BIX Tokens.**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United Stat*es, 201 F.3d 110, 113 (2d Cir. 2000). Plaintiff's standing is a necessary element, and to satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff must demonstrate (1) injury in fact, (2) a causal connection between that injury

6

and the complained-of conduct, and (3) a likelihood that the injury will be redressed by a favorable decision. *See Strubel v. Comenity Bank*, 842 F.3d 181, 187-188 (2d Cir. 2016); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Standing is also a prerequisite for Plaintiff's state law claims. *See Hess v. I.R.E. Real Estate Income Fund, Ltd.*, 629 N.E.2d 520 (Ill. App. Ct. 1993) (plaintiff lacked standing to sue defendants with whom she never dealt and did not purchase securities from) (citing *Glazewski v. Coronet Insurance Co.*, 483 N.E.2d 1263 (Ill. 1985)).

Moreover, "if none of the named plaintiffs purporting to represent a class establishes a requisite case or controversy with the defendant, none may seek relief on behalf of herself or himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *see also Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir.  2012) (affirming dismissal and holding that plaintiff must establish standing against each defendant in order to assert class claims against them).

Here, as set forth above, Plaintiff's claims relate to the sale of six digital tokens, BIX, EOS, TRX, OMG, LEND, and ELF, referred to in the SAC as the "Tokens."  [SAC at ¶ 1.] However, Plaintiff's purported transactions, attached to the SAC as Exhibit A, relate solely to the BIX token and nothing else. [SAC at Appendix A.] Plaintiff therefore lacks standing to pursue alleged claims related to Tokens other than BIX (EOS, TRX, OMG, LEND, and ELF) either individually or on behalf of anyone else.

## II.   Plaintiff Failed to Allege Domestic Transactions Subject to the Securities Laws.

All of Plaintiff's federal claims should be dismissed because he has failed to plead facts demonstrating that his purchases took place domestically. In sum, Plaintiff alleges that he purchased the assets of an Estonia registered company, but nothing more including where, how,

or from whom these purchases and sales were made. Plaintiff has therefore failed to meet his burden under *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010) to rebut the presumption against the extraterritorial application of the federal securities laws.[5]   The federal securities laws are limited to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities." *Id.*; *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 66 (2d Cir. 2012). The mere fact that Plaintiff is a U.S. resident does not satisfy Plaintiff's burden.   *Absolute Activist*, 677 F.3d at 69 (finding that "citizenship or residency does not affect where a transaction occurs."); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188–89 (2d Cir. 2014) ("[T]he fact that a U.S. entity places a buy order in the United States for the purchase of foreign securities on a foreign exchange is insufficient to incur irrevocable liability, as set forth in *Absolute Activist*, in the United States."); *In re Royal Bank of Scotland Group PLC Sec. Litig.*, 765 F. Supp. 2d 327, 337 (S.D.N.Y. 2011) (noting that "Plaintiffs approach—that it is enough to allege that Plaintiffs are U.S. residents who were in the country when they decided to buy RBS shares—is exactly the type of analysis that *Morrison* seeks to prevent"). To the contrary, transactions that satisfy *Morrison* are carefully limited, and exclude many transactions made by U.S. residents, including the transactions at issue here.

Plaintiff has failed to allege that any of his Token purchases occurred on a domestic exchange. Indeed, he does not even bother to allege where he purchased BIX.   But even assuming *arguendo* that Plaintiff purchased BIX on the Bibox Exchange, such exchange was a foreign one, headquartered in Estonia at the relevant time. [SAC at ¶ 18.]   To state the obvious, that does not meet the definition of "domestic exchange."

---

[5] Even if the U.S. securities laws did apply, the Token sale was not an offering of securities.  There is, however, no need for the Court to address or reach these issues at this stage because Plaintiff's claims fail for multiple reasons, as set forth in this brief.

In order to meet his burden under *Morrison*, Plaintiff must therefore allege that his purchases and sales were "domestic." *SEC v. Revelation Capital Mgmt., Ltd.*, 246 F. Supp. 3d 947, 952 (S.D.N.Y. 2017). To do so, "plaintiff must allege facts suggesting that irrevocable liability was incurred or title was transferred within the United States." *Absolute Activist*, 677 F.3d at 69-70 at 68. In particular, the plaintiff must allege facts concerning "the formation of contracts, the placement of purchase orders, the passing of title, or the exchange of money." *Id.* at 70.

Plaintiff fails his burden. He does not allege: (1) where his transactions took place; (2) any facts regarding the exchange on which he placed his orders; (3) any facts regarding the confirmations he received from those exchanges; or (4) any details regarding his transactions in BIX other than the date and price. Indeed, the Plaintiff does not allege that he purchased anything directly from Defendants, and after a search of their books and records, Defendants have not located a single record of Plaintiff's alleged transactions. [Shi Decl. at ¶ 9.] This fact, in conjunction with Plaintiff's willful failure to provide any meaningful details of his purchases, indicates that Plaintiff's transactions either occurred on the secondary or over-the-counter markets or through improper means, such as by false identification.[6]

Plaintiff tries to rescue his claim by asserting that "Bibox specifically directed its promotion and advertisement of BIX  . . .  to the United States." [SAC at ¶ 87.] But, those allegations again miss the point, as the focus of the *Morrison* test is the location of the ***transactions***. *See Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014). In *Parkcentral*, the Second Circuit acknowledged that "false statements may have been intended to deceive investors worldwide," but affirmed dismissal because the

---

[6] If Plaintiff's purchase of BIX was made by way of false identification, such purchase would be in contravention of the User Agreement. [Shi Decl. at Ex. B, section 3.3.]

claims were related to a foreign company traded primarily on a foreign exchange, and thus "the relevant actions . . . are so predominantly" foreign as to violate the presumption against extraterritoriality.  *Id.*  As in *Parkcentral*, the alleged solicitations here emanated from a foreign company, Bibox Holdings, which Plaintiff concedes is a British Virgin Islands company, and from Bibox Technology, which is an Estonian company.  [SAC at 17-19.]   In sum, the allegations are "predominantly foreign" and fall outside the territorial scope of the federal securities laws.[7]

### III.  Plaintiff Has Failed to State a Cause of Action under Rule 12(b)(6) for Any of His Federal Claims.

A complaint fails under Federal Rule of Civil Procedure 12(b)(6) if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). On a motion to dismiss, a court "need not accept conclusory allegations or legal conclusions couched as factual [] allegations." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (quotation marks omitted). Accordingly, "bald assertions and conclusions of law will not suffice to avoid dismissal, nor will factual allegations that are wholly conclusory." *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 222 (2d Cir. 2018) (internal citation and quotation marks omitted). A court "may consider  documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken" in deciding a motion to dismiss. *Rayner v. E\*TRADE Fin. Corp.*, 248 F. Supp. 3d

---

[7] Plaintiff lacks standing to pursue alleged claims related to Tokens other than BIX, because he never purchased them.  However, even if Plaintiff had standing to pursue such alleged claims, they would similarly be barred by the presumption against extraterritoriality because Plaintiff's SAC is completely devoid of any allegations to support a finding that Plaintiff's transactions for those Tokens are domestic in nature.

497, 500 (S.D.N.Y. 2017) (*citing Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)), aff'd, 899 F.3d 117 (2d Cir. 2018).

### A.   The SAC fails to state a claim because Plaintiff's claims against all Defendants are barred by the statute of limitations.

The burden is on Plaintiffs to affirmatively plead "compliance with the [Securities Act's] statute of limitations because it is a substantive element of the cause of action." *Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 902 F. Supp. 2d 329, 346 (S.D.N.Y. 2012), *aff'd sub nom. IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383 (2d Cir. 2015).  Plaintiff fails to meet this burden.

#### 1.   *Plaintiff's claims under Section 12(a)(1) against all defendants are untimely.*

Actions brought under Section 12(a)(1) of the Securities Act are barred "unless brought within one year after the violation upon which it is based." 15 U.S.C. § 77m.  Thus, a claim under Section 12(a)(1) cannot be brought "more than one year after the purchase of the securities at issue." *In re Merrill Lynch Auction Rate Sec. Litig.*, Nos. 09 MD 2030(LAP), 10 Civ. 0124(LAP), 2012 WL 1994707, at *4 (S.D.N.Y. June 4, 2012).

Plaintiff last allegedly purchased BIX on October 27, 2018, and last allegedly sold BIX on December 11, 2018, well over a year before the initial filing of this Action on April 3, 2020.[8] However, in an attempt to evade the clear bar imposed by the statute of limitations, Plaintiff advances a novel theory that he could not have discovered his claims until April 3, 2019 when the SEC issued informal guidance (the "SEC Guidance") concerning "Investment Contract" analysis of digital assets.  This argument fails.

---

[8] Plaintiff fails to allege that he purchased any Tokens other than BIX, and as such has failed to set forth any basis to meet his burden to establish that the claims related those non-BIX Tokens are timely.

As set forth above, by the statute's own terms, the discovery rule does not apply to Section 12(a)(1) claims. Unlike Section 12(a)(2) of the Securities Act, which governs misstatements in connection with prospectuses, Section 12(a)(1)'s statute of limitation is not subject to a "discovery rule." *Compar*e 15 U.S.C. § 77m (action brought under 12(a)(1) is untimely "unless brought within one year after the violation upon which it is based") with *id*. (action brought under 12(a)(2) is untimely unless "brought within one year after the discovery of the untrue statement or the omission"). Rather, the limitations period begins to accrue, "regardless [of] whether Plaintiff knew or reasonably could have known of the injury at that time." *See, e.g.*, *Teva Pharm. Indus. Ltd. v. Deutsche Bank Sec. Inc.*, No. 09 Civ. 6205(AKH), 2010 WL 6864006, at *2 (S.D.N.Y. Dec. 14, 2010); *see also DeLeonardis v. Berg*, No. 97 CV 1655(NG), 1998 WL 760338, at *3 (E.D.N.Y. Sept. 15, 1998), *aff'd*, 199 F.3d 1321 (2d Cir. 1999) ("The one-year period is not an inquiry notice provision" and "runs from the date of the sale"); *Cook v. Avien, Inc.*, 573 F.2d 685 (1st Cir. 1978); *Pell v. Weinstein*, 759 F. Supp. 1107, 1111 (M.D. Pa. 1991), *aff'd*, 961 F.2d 1568 (3d Cir. 1992).

Furthermore, Plaintiff's attempt to equitably toll the statute of limitations pursuant to a theory that certain relevant facts were fraudulently concealed fails.  [SAC at ¶ 90; 245-256.] Outside this Circuit, most courts to consider the issue have held that a plaintiff can never rely on common law doctrines such as equitable tolling or fraudulent concealment to plead around the one-year limitations period for Section 12(a)(1).  These courts reason that "the fact that [Section 13] plainly fails to include a discovery rule for § 12(a)(1)—when juxtaposed with a provision within the same sentence specifically allowing it for § 12(a)(2)—shows that Congress intended to negate equitable tolling in this context." *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 553 (6th Cir. 2012) (collecting cases); *Barton v. Peterson*, 733 F. Supp. 1482, 1490 (N.D. Ga. 1990)

("The better reasoned authority holds that equitable tolling and fraudulent concealment are not available to toll the one-year statute of limitation for registration claims."). As one court explained, "since the registration, or lack thereof, of securities is a public record and easily discovered, it is inappropriate to apply the equitable tolling doctrine to a claim brought for failure to register securities." *In re Rexplore, Inc. Sec. Litig.*, 671 F. Supp. 679, 687 (N.D. Cal. 1987).

And, even though the Second Circuit has permitted equitable tolling for Section 12(a)(1) claims, it has done so only in the rarest of circumstances, none of which apply here. *See, e.g.*, *Katz v. Amos Treat & Co.*, 411 F.2d 1046, 1055 (2d Cir. 1969). To equitably toll the statute of limitations due to fraudulent concealment, Plaintiff would have to demonstrate that (1) the defendant wrongfully concealed material facts relating to the defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled. *See Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014). Plaintiff cannot do so.

As a preliminary matter, Plaintiff fails to allege that he was affected by any of Defendants' purported concealment—Plaintiff has not alleged that he ever himself read or received any communication from Defendants in the relevant period. Plaintiff's allegations relating to Defendants' statements in "whitepapers, press releases, media reports, and other publicly disclosed reports and information" are based "upon information and belief . . . based on the investigation conducted by and through Plaintiff's attorneys . . . " [SAC at pp. 1.] Put differently, Plaintiff has not alleged that Defendant's statements informed his decision to buy BIX or informed his knowledge of whether these Tokens were securities or not.

In any event, Plaintiff has not alleged that defendants wrongfully concealed material facts related to defendant's wrongdoing. The only information defendants allegedly "concealed" is a legal conclusion as to whether the tokens should be deemed securities as a matter of law. These allegations are far afield of those in *Katz*, where that defendant fraudulently told the plaintiff that a registration was at the SEC and "would come out momentarily." 411 F.2d at 1055; *Pollack v. Laidlow Holdings, Inc.*, No. 90 Civ. 5788 (DLC), 1995 WL 261518, at *16 (S.D.N.Y. May 3, 1995) ("For equitable tolling to apply [under *Katz*], the plaintiffs must allege some conduct that would have caused the plaintiffs to believe that the Notes were in fact registered when they were not."). That is not the case here where by Plaintiff's own allegations defendants affirmatively stated that the Tokens were not securities and would not therefore be registered. [SAC at ¶246.]

Moreover, even if an intervening change in law were to constitute an appropriate basis for equitable tolling, the SEC Guidance is not new law at all—it is non-binding staff regulatory guidance.[9] Nor can the SEC Guidance be considered "new" or "hidden." Although Plaintiff claims that prior to its publication, it was unclear to a reasonable investor that the Tokens were securities; Plaintiff omits the fact that the 1946 *Howey* test was and is considered the relevant test for whether an asset, such as these digital assets, are offered and sold as an investment contract and therefore a security[10] well before the SEC staff's interpretive "Framework." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946). Although a disquisition of the *Howey* test is beyond the scope of this Motion, it is indisputable that such test pre-dates the ICO and Plaintiff's purported transactions in this case, and would have been eminently clear to a reasonable investor at that

---

[9] *See* U.S. Securities and Exchange Commission, Clayton, J. Statement Regarding SEC Staff Views, Sept. 13, 2018 available at  https://www.sec.gov/news/public-statement/statement-clayton-091318 ("Staff of the SEC frequently make their views known through a variety of communications, including written statements, compliance guides, letters, speeches, responses to frequently asked questions and responses to specific requests for assistance . . . The Commission's longstanding position is that all staff statements are nonbinding and create no enforceable legal rights or obligations of the Commission or other parties.")

[10] Although Defendants dispute the point, whether the Token sale was in fact an offering of securities is beyond the scope of this Motion.

time.  Notably, on July 25, 2017, three months before the ICO for Bibox, the SEC issued an investigative report (the "DAO Report"), applying the *Howey* test to evaluate whether an ICO was unregistered securities offering, and also issued an investor bulletin putting the market on notice that "[d]epending on the facts and circumstances of each individual ICO, the virtual coins or tokens that are offered or sold may be securities." *See* Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The Dao, SEC, Release No. 81207 at 17-18 (July 25, 2017), available at https:// www.sec.gov/litigation/investreport/34-81207.pdf; Investor Bulletin: Initial Coin Offerings, SEC, July 25, 2015, https://www.sec.gov/oiea/investor-alerts-and-bulletins/ib_coinofferings.

Second, the SAC has not alleged that the purported concealment prevented plaintiff's discovery of the nature of the claim within the limitations period.  In fact, Plaintiff's allegations of concealment actually support that all the relevant facts were apparent at the time of his purchase.  In short, Plaintiff attempts to assert that Defendants concealed relevant facts by asserting that "Bibox falsely stated that it was not 'abetting investments in the form of securities,' in that BIX was a security."[11]   [*See* SAC ¶ 248.]  That is nonsensical.  Plaintiff alleges, in other words, that the issuers of BIX affirmatively stated the relevant facts underlying the claim in October of 2017:[12]  that the issuers of BIX were not treating the purchase and sale of the BIX Token as a security, and therefore were not registering it.  As such, Plaintiff would have been aware at the time of purchase that BIX was not registered.  Put differently, Plaintiff fails to allege any facts that were not apparent at the time of his purchase.

---

[11] Note that the Complaint is entirely silent as to whether Plaintiff, as opposed to the proverbial reasonable investor, heard or relied on statements from defendants that prevented him from filing suit on a timely basis.

[12] Plaintiff also makes this allegation with respect to Tokens other than BIX.  [*See* SAC at ¶ 119 ("In connection with the ICOs, from 2017 until early 2019, the Issuers and Bibox made numerous misleading statements and omitted key information to lead reasonable investors to conclude that the Tokens were not securities."); ¶ SAC at ¶ 120 ("Issuers touted false technical details about their supposed crypto-asset and its utility, compared their Token to Bitcoin and Ethereum (which are not securities), and then often explicitly told investors that the Token was not a security.").

Moreover, the SAC alleges that Tokens are securities under the test set forth in *SEC v. Howey*.  [SAC at ¶¶ 139-241.]  And, in that section, the SAC concedes that the facts supporting the allegation that Bibox was security, as opposed to the conclusory statements about the meaning of those facts,  were publicly disclosed and readily apparent in 2017.  [*See* SAC ¶¶ 164-172]

Third, the Plaintiff has not alleged that he exercised due diligence in pursuing the discovery of the claims during the relevant time period. In the absence of any particularized allegations of due diligence, courts routinely reject such claims. *See, e.g.*, *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998).

## 2. Plaintiff's claims under Section 12(a)(2) & 29(b) are also untimely.

The same analysis detailed above applies to Plaintiff's Section 12(a)(2) and Section 29(b) claims.  Courts have found that the one-year statute of limitations for Section 29(b) claims runs from "the time when an individual could have, through the exercise of reasonable diligence, discovered the fraud at issue."  *Alpha Capital Anstalt v. Oxysure Sys., Inc.*, 216 F. Supp. 3d 403, 408 (S.D.N.Y. 2016) (citation omitted); *see also Weiss v. Altholtz*, No. 10 C 02609, 2011 WL 4538459, at *2–3 (N.D. Ill. Sept. 29, 2011).  Similarly, Section 12(a)(2) claims run "within one year after the discovery of the untrue statement or the omission." 15 U.S.C. § 77m.

As detailed at length above, Plaintiff has not alleged that defendants concealed or omitted the salient fact here – that the offer and sale of the Tokens were not treated as creating an investment contract and therefore there was no security that needed to be registered. Instead, the allegations show the opposite.  Moreover, again the legal framework to be applied to determine whether these Tokens are securities pre-dates the relevant ICOs.  Simply put, even assuming for purposes of this motion that the offer and sale of these Tokens created investment contracts,

Plaintiff knew or could have known through the exercise of reasonable due diligence that at the time of his purchase (a) the Tokens were not registered as securities and (b) the SEC had taken the position that the offer and sale of certain digital assets, which met the factors enunciated in the *Howey* would be considered investment contracts/securities. Put yet another way, "[i]gnorance of the law alone does not toll statutes of limitations." *Alpha*, 216 F. Supp. 3d at 408; *Weiss*, 2011 WL 4538459, at *2; *Celsion Corp. v. Stearns Mgmt. Corp.*, 157 F. Supp. 2d 942, 948 (N.D. Ill. 2001) ("it is the discovery of the facts constituting the violation that starts the one-year period of limitations . . . .") (citation omitted).

### 3. Plaintiff's Illinois Blue Sky Law claims are untimely.

In order to seek rescission of a purchased security under the Illinois Blue Sky Law, as Plaintiff does, he must comply with a six-month notice requirement, to wit:

> "Notice of any election provided for in subsection A of this Section shall be given by the purchaser within 6 months after the purchaser shall have knowledge that the sale of the securities to him or her is voidable, to each person from whom recovery will be sought,[13] by registered mail or certified mail, return receipt requested, addressed to the person to be notified at his or her last known address with proper postage affixed, or by personal service."

815 Ill. Comp. Stat. Ann. 5/13(B) (emphasis added). Thus, a purchaser is required to give notice within six months after he has "knowledge that the sale ... is voidable" of his election to rescind the sale. "[T]he time for notice begins to run not from the time of knowledge of the underlying facts, but rather from the time of knowledge that those facts give rise to a right of rescission." *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1236 (N.D.Ill.1990) (Rovner, J.) (compiling cases). "'Knowledge that a sale of securities is voidable is a mixed

---

[13] While Plaintiff alleges that he provided notice of his election to rescind to Bibox, Plaintiff fails to allege that any notice at all was provided to the individual defendants, who were also entitled to notice of his election to rescind under the statute. *See* 815 Ill. Comp. Stat. Ann. 5/13(B) ("Notice of any election provided for in subsection A of this Section shall be given by the purchaser within 6 months after the purchaser shall have knowledge that the sale of the securities to him or her is voidable, ***to each person from whom recovery will be sought*** . . .") (emphasis added).

question of law and fact.'" 766347 *Ontario Ltd. v. Zurich Cap. Mrkts., Inc.*, 249 F.Supp.2d 974, 988 (N.D. Ill. 2003) (*quoting Fewell v. Kozack*, No. 98 C 2924, 1999 WL 966447, at *8 (N.D.Ill. Oct.19, 1999)).

As discussed above, Plaintiff admits that, at the time he purchased the BIX Token in October 2018 that Bibox did not classify BIX as a security. [SAC at ¶ 119; 123.]  He also concedes that he was aware of the legal consequence of such fact—in the SAC, he alleges that the issuers "expressly declared" that the Tokens "are not an investment, currency, security, commodity, a swap on a currency, security, or commodity or any kind of financial instrument." [SAC at ¶ 123.] He, therefore, was in full possession of all the facts giving rise to his rescission claim in October 2018, because he knew that he was purchasing Tokens that were unregistered and marketed as non-securities.  No additional facts came to light after his purchase; and Plaintiff does not allege any different. Plaintiff's notice of rescission therefore should have been sent no later than April 2019. However, by his own allegation, he only provided notice (which he did not attach, but instead described in summary fashion) "within six months" of filing the original in April 2020. [SAC at 648.] Simply put, his alleged notice was untimely.[14]  Failure to meet the notice provisions is fatal to the claim.  *Goldberg v. 401 North Wabash Venture LLC*, 2010 WL 1655089 at *11 (N.D. Ill. Apr. 22, 2010) (explaining that failure to allege compliance with six-month notice requirement is grounds for dismissal).[15]

Even if one allows Plaintiff to wait to issue the required notice until the non-binding April 3, 2019 SEC Guidance (in contravention of the legal distinction between facts and law and in contravention of his own allegations), his notice still was untimely. Plaintiff only alleges in a

---

[14] The original Complaint was filed on April 3, 2020; therefore, according to Plaintiff's allegations, notice was provided between October 2019 and April 2020.

[15] Plaintiff moreover could not have provided notice for any other Token as by his own allegations he did not purchase any Tokens other than BIX.

conclusory fashion that he provided notice between October 2019 and April 2020. To meet the statutory requirement, the notice (even under Plaintiff's incorrect theory) must have been issued no later than October 3, 2019, six months after the publication of the SEC Guidance.  Plaintiff's conclusory allegation of "within six months of April 2020" does not get him there.

### B.   The SAC fails to state a claim under Section 12 because Defendants are not "Statutory Sellers" within the meaning of the Statute.

To assert a claim under Section 12(a)(1) of the Securities Act, a plaintiff must allege that defendant offered or sold a security in violation of 15 U.S.C. § 77e to the plaintiff. 15 U.S.C. § 77l; *see Pinter v. Dahl*, 486 U.S. 622, 643 (1988).  Section 12(a)(1) of Securities Act, codified at 15 U.S.C. § 77l (a)(2), attaches liability to "[a]ny person who ... offers or sells a security ..., by means of a prospectus or oral communication...." (emphasis added).   In *Pinter v. Dahl*, the United States Supreme Court defined a statutory seller within the meaning of section 12(1) of the Securities Act as one who must have either (1) passed title of the security to the plaintiff; or (2) successfully solicited the purchase motivated at least in part by his own financial interest. 486 U.S. 622, 642, 647, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988); *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (*quoting Pinter*, 486 U.S. at 642, 647). The same analysis of who constitutes a statutory seller governs section 12(a)(2). *See Wilson v. Saintine Exploration and Drilling Corp.*, 872 F.2d 1124, 1126 (2d Cir.1989); *Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir.1988).

To plead that a defendant "passed title" sufficiently to satisfy the first prong of the *Pinter* test, a plaintiff must allege that he was in privity with the defendant and actually purchased his shares directly from the defendant.  *Pinter*, 486 U.S. at 644 n.21; *see also Credit Suisse First Bos. Corp. v. ARM Fin. Grp., Inc.*, No. 99 CIV 12046 WHP, 2001 WL 300733, at *10 (S.D.N.Y. Mar. 28, 2001) ("[P]laintiffs here did not purchase directly from [defendant] and thus lack

standing under the first prong of *Pinter*."); *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, No. 00 CIV. 8058(NRB), 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001) ("As plaintiff has alleged only that NACC was 'part of the chain of title' and not that NACC directly sold the Certificates to it, plaintiff cannot satisfy the first prong of Pinter.").

Here, Plaintiff alleges that he bought BIX in June and October of 2018, but fails to allege that he bought BIX from Defendants.  Moreover, after a search of Defendants' records and files, Defendants have uncovered no record of Plaintiff purchasing or selling BIX.  In fact, the SAC fails to elucidate whether Plaintiff's alleged purchase was on the secondary market, or directly from Bibox.  Specifically, Plaintiff ***has not alleged that he purchased BIX as part of Bibox's ICO in 2017***.  As such, there is no evidence, nor allegation, that Defendants passed title of BIX to Plaintiff.  Moreover, as to the tokens other than BIX, Plaintiff has not alleged any transactions at all.

To adequately plead the second, "successfully solicited," prong of the *Pinter* test, a plaintiff must adequately allege some "direct contact" with the defendant. *In re Deutsche Telekom AG Secs. Litig.*, 2002 WL 244597, at *5 (S.D.N.Y. Feb. 20, 2002). In other words, a plaintiff "must allege not only that [Defendants] actively solicited investors, but that [he] purchased the securities as a result of [Defendants'] solicitation." *Steed Fin. LDC*, 2001 WL 1111508, at *7. Put yet a different way, courts in this Circuit "consistently have held that persons are not liable under § 12 for solicitation unless they directly or personally solicit the buyer." *Shain v. Duff & Phelps Credit Rating Co.*, 915 F. Supp. 575, 581 (S.D.N.Y. 1996); *see also Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, No. 00 CIV. 8058(NRB), 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001); *In re Gas Reclamation, Inc. Sec. Litig.*, 733 F. Supp. 713, 723–24 (S.D.N.Y. 1990).

20

Defendants are not sellers under the second test annunciated in *Pinter* as Plaintiff has failed to plead any allegations that Defendants actively solicited the sale of the securities to Plaintiff and that as a result of those solicitations, Plaintiff purchased the securities. Here, Plaintiff does not even allege that he read or reviewed any of the material cited in the SAC prior to his purchase, and in fact, concedes that a substantial portion of the allegations are made on information and belief after his attorneys reviewed the materials for the purpose of this lawsuit. [*See* SAC at preamble ("Plaintiff's allegations are based upon personal knowledge as to himself and his own acts, and ***upon information and belief*** as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of relevant whitepapers, press releases, media reports, and other publicly disclosed reports and information about Defendants.") (Emphasis added.)   Put differently, Defendant's statements did not inform Plaintiff's decision to buy BIX.  In fact, Plaintiff alleges no direct, or even indirect, contact with Defendants.  In conclusion, Plaintiff's bald allegations of solicitation are insufficient to sustain section 12(a) liability as a "seller" pursuant to the second *Pinter* test.

Defendants are not statutory sellers under Section 12(a)(2)[16] for the additional reason that Plaintiff appears to have made his purported purchase of BIX outside of the ICO, apparently in a secondary market or over-the-counter transaction.   In *Gustafson v. Alloyd Co.*, the Supreme Court held that Section 12(a)(2) does not apply to secondary market sales of securities. 513 U.S. 561, 583-84, 115 S. Ct. 1061, 1073-74 (1995). Since *Gustafson*, it has been "well-settled that a plaintiff may maintain a section 12(a)(2) claim only where the plaintiff purchased securities directly in the initial public offering; so-called 'aftermarket' or 'secondary market' purchasers do

---

[16] Significantly, although beyond the scope of this Motion, section 12(a)(2) governs misstatements in connection with prospectuses, and Plaintiff's reliance on the BIX whitepaper to satisfy Rule 12(a)(2)'s "prospectus" requirement is misguided.

not have standing to maintain a section 12(a)(2) claim." *In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 57 (S.D.N.Y. 2013); *accord Komanoff v. Mabon, Nugent & Co.*, 884 F. Supp. 848, 857 (S.D.N.Y. 1995). (no solicitation alleged between the time of the ICO and Plaintiff's purchase.)

### C.   Plaintiff has failed to state a claim under the Illinois Blue Sky State Law[17] for the same reason Plaintiff's Section 12 of the Securities Act claims fail—Defendants are not statutory sellers.

Defendants are also not statutory sellers under Illinois' Blue Sky Law (Plaintiff's residence).  In *Wheaten v. Mathews Holmquist & Associates, Inc.*, No. 94 C 1134, 1995 WL 12523 (N.D. Ill. Jan 10, 1995), the court explained that where defendants did not meet the Supreme Court definition in *Pinter* of "one who offers or sells securities" for the purpose of Section 12, such defendants will likewise not meet the definition of "one who offers or sells securities" for the purpose of Section 17 or for the purpose of Section 12 of the Illinois Securities Act. *Id.* Thus, as Defendants are not sellers under Section 12 of the Federal Securities Act, Defendants are also not sellers under the Illinois Securities Act.

### D.   Plaintiff has failed to state claims under Section 29(b) of the Exchange Act because he has failed to allege that he is in contractual privity with any Defendant.

"To establish a violation of Section 29(b), the plaintiff[ ] must show that (1) the contract involved a prohibited transaction, (2) [it is] in contractual privity with the defendant[s], and (3) [it is] in the class of persons the Act was designed to protect." *Frati v. Saltzstein*, No. 10 Civ.

---

[17] "[I]f none of the named plaintiffs purporting to represent a class establishes a requisite case or controversy with the defendant, none may seek relief on behalf of herself or himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *see also Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (affirming dismissal and holding that plaintiff must establish standing against each defendant in order to assert class claims against them). Plaintiff may argue that he can have "class standing" to pursue the Blue Sky claims for states in which he does not reside. This argument fails because in order to have "class standing," Plaintiff must establish that they personally have standing as to each Defendant. *Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 106 (2d Cir. 2019) (affirming decision that question regarding ability to assert "class standing" moot where "[plaintiff] no longer had any viable claims").

22

3255, 2011 WL 1002417, at (S.D.N.Y. Mar. 14, 2011). To demonstrate contractual privity with defendants for purposes of Section 29(b), "plaintiff must be a party to a contract or in privity with a party to a contract that violates [the] securit[ies] law[s]." *McGowan Investors LP v. Frucher*, 481 F.Supp.2d 405, 412 (E.D.Pa.2007).

Plaintiff seeks to "void contracts and recover damages with respect to purchases of Tokens on Bibox within the last three years and within one year from when an investor could adequately plead that a Token is a security." [SAC at ¶ 286, 297.] However, Plaintiff never purchased any Tokens other than BIX and therefore he has not alleged that he is contractual privity with the defendants as to any of those Tokens.  Moreover, Plaintiff has failed to allege that he is either a party to a contract or in privity with the Defendants with respect to BIX itself. As such, Plaintiff's Section 29(b) claims should be independently dismissed.

> ### E.   Plaintiff has not alleged an actionable misstatement under Section 12(a)(2).

Even if Defendants are found to be statutory sellers, Plaintiff's 12(a)(2) claim would still fail because he does not allege any actionable misstatement of facts that would support a claim under section 12(a)(2).  Section 12(a)(2) requires a plaintiff to allege that a sale was effected "by means of a prospectus or oral communication" and that such a prospectus contained an untrue or misleading statement.  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010).  Plaintiff's purported misstatements center on his allegation that Defendants stated that the Tokens are not securities.  [SAC at 119.]  However, whether the offer and sale of the Tokens classify as securities or not is a question of law, and the Defendants' opinion as to the status of the law cannot be construed as a misstatement of fact.  To plead that an opinion is "false," Plaintiff must allege either that (i) the statements were both objectively false and subjectively false (i.e., not genuinely believed at the time they were made),  *see  Omnicare, Inc. v. Laborers*

*Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 185-186 (2015), or (ii) that the defendant omitted material facts underlying the basis for the opinion and those facts conflict with what a reasonable investor would take from the statement itself. *Id.* at 189. As such, Plaintiff has failed to plead an actionable claim under Section 12(a)(2). Here, Plaintiff does not allege that the statements were subjectively false—i.e. that they were not believed to be true at the time they were made. Thus, Plaintiff must demonstrate that Defendants omitted material facts underlying the basis for the opinion and those facts conflict with what a reasonable investor would take from the statement itself. But Plaintiff's entire claim rests on the allegation that, prior to the SEC Guidance, many people believed that the Tokens were not securities. As such, Plaintiff has not demonstrated Defendants omitted any material facts, or that any facts conflict with what reasonable investor would take away from Defendants' statements.

### F.   Plaintiff's control person claims fail too.

Finally, because the SAC has failed to plead a primary violation of the securities laws for the reasons set forth above, all of its control person claims also fail and must be dismissed. *See, e.g.*, *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 873 F.3d 85, 99 (2d Cir. 2017); *Ellison v. Am. Image Motor Co., Inc.*, 36 F. Supp. 2d 628, 641 (S.D.N.Y. 1999). Section 15 of the Securities Act and Section 20(a) of the Exchange Act are the two specific provisions of the Securities Act that impose liability for damages on secondary violators. These sections specifically impose liability on controlling persons and must be dismissed because the claims are derivative of, and dependent on, Plaintiff's inadequately pled registration violation claims. *See ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 207 (2d Cir. 2009) (control person claims "fail for want of a primary violation"); *Jones v. Party City Holdco, Inc.*, 230 F. Supp. 3d 185, 190 (S.D.N.Y. 2017) (to state a claim under

Section 15, "a plaintiff must show a 'primary violation' of" Sections 11 or 12 "and control of the primary violator by defendants."). Secondary liability under Illinois law is also only available where a primary violation exists. *See In re National Century Fin. Enterprises, Inc.*, 845 F. Supp. 2d 828 (S.D. Ohio 2012) (explaining that under Illinois law, secondary liability is limited to a control person, broker-dealer, or agent who materially aids in the primary violation).

Moreover, Plaintiff's control person claims also fail because the SAC contains virtually no allegations of control by the Individual Defendants. The SAC only alleges their titles and, on that basis, assumes that they were control persons of Bibox. With respect to all the Individual Defendants, the SAC does not set forth any allegations of control other than that they co-founded Bibox. [SAC at ¶ 18.] These bare allegations do not support a plausible inference that the Defendants exercised control over the alleged solicitations, and their status and job titles are not in itself sufficient to establish control. *Emerson v. Mut. Fund Series Tr.*, 393 F. Supp. 3d 220, 260 (E.D.N.Y. 2019) ("[B]oilerplate allegations that a party controlled another based on officer or director status are insufficient.").

## IV. Dismissal Is Appropriate under Rule 12(b)(2) for Certain Defendants Because Plaintiff Has Failed to Allege a Basis for the Exercise of Personal Jurisdiction over the Defendants

The SAC must be dismissed for lack of personal jurisdiction for Individual Defendants Ma, Lei, and Bibox Technology Ltd. because the Plaintiff fails to allege any facts to support the exercise of jurisdiction over these defendants. To survive a motion to dismiss under Rule 12(b)(2), a plaintiff bears the burden of establishing that the court has jurisdiction over each defendant—that each defendant has constitutionally adequate contacts with the forum. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). Conclusory jurisdictional allegations will not suffice. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 86 (2d Cir. 2018) (dismissing claims based on sparse allegations that defendant "controlled or otherwise

directed" activity in the forum). Moreover, contacts of a corporate defendant cannot be imputed to individual defendants based on "the mere fact of their positions" absent any indication that those individuals "exercised control over" the entity's contacts with the forum. *King Cty., Wash. v. IKB Deutsche Industriebank AG*, 769 F. Supp. 2d 309, 320-21 (S.D.N.Y. 2011).

Plaintiff does not and cannot allege that the Court has general jurisdiction over Defendants; rather, the SAC attempts to allege specific jurisdiction. [SAC at ¶ 30.]  However, Plaintiff does not (and cannot) sufficiently allege that the Court has specific jurisdiction as to certain defendants.  Specific jurisdiction centers on the "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (citation omitted). Plaintiff first must allege that defendant has minimum contacts with the forum. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). Second, Plaintiff must show a "causal relationship between a defendant's U.S. contacts and the episode in suit," and Plaintiff's claim must "arise from the defendants' purposeful contacts with the forum." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (dismissing claims unrelated to transactions with the forum) (citation omitted); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) ("'Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts.'") (citations omitted)).

To establish minimum contacts, Plaintiff must make a *prima facie* case that each "defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987). Defendants' contacts may not be "random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations and quotation marks omitted). Plaintiff may also establish purposeful direction where Defendants "'expressly aimed' 'their intentional, and allegedly tortious, actions'" at the forum. *Walden*, 571 U.S. at 282, 288 (reversing holding that foreseeable harm in the forum was sufficient, and dismissing for lack of personal jurisdiction) (citing *Calder v. Jones*, 465 U.S. at 789-90).

The reach of New York's long-arm statute is also constrained by the federal constitutional limits. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242, 244 (2d Cir. 2007). For the federal claims, the relevant forum is the United States as a whole. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 142 n.21 (2d Cir. 2014).

Defendants Ma and Lei are mentioned a mere four times in the 309 page complaint. The only arguably relevant allegations underscore the lack of jurisdiction, i.e., that, together with Defendant Wang, Defendants Ma and Lei "founded Bibox in China but shortly thereafter moved Bibox's operations to Estonia."[18] [SAC at ¶18.] Plaintiff will not, even if accorded limited jurisdictional discovery, be able to establish specific jurisdiction as to those defendants. [*See* Ma Decl. at ¶ 4-5; Lei Decl. at ¶ 4-5.] Similarly, Defendant Bibox Technology Ltd is mentioned twice in the 309 page complaint. The only allegation that is arguably related to jurisdiction is that this entity "is a company incorporated in the Republic of Estonia that contributes to the operation of the Bibox Exchange." [SAC at ¶ 20.]

Such generalized allegations are wholly insufficient to establish personal jurisdiction. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 86 (2d Cir. 2018) (dismissing claims based on sparse allegations that defendant "controlled or otherwise directed" activity in the forum).

---

[18] While the complaint alleges Ma and Lei's involvement in forming Bibox Technology overseas, that allegation is misplaced, but in any event, such allegation on its face simply underscores their lack of connection to the United States.

**V.    Alternatively, the Case Should be Dismissed Pursuant to the User Agreement Forum Selection Clause or Directed to Arbitration in Singapore.**

Plaintiff cannot have it both ways—if he is not in contractual privity with Defendants, he does not have a viable securities claim, and if he is in contractual privity, his claims must be addressed as set forth in the User Agreement: the claims are either subject to mandatory arbitration in Singapore or can only be heard in court where the Defendants are domiciled.  Since November 2018, prior to Plaintiff's purported sale of BIX, users of the Bibox Exchange have been subject to a User Agreement that requires all users to arbitrate all disputes with Bibox in Singapore.[19]  [*See* Shi Decl. at Ex. B, section 20 "You unconditionally agree that any disputes arising from this clause or in connection with this Services shall be settled through friendly consultation between the two parties. If the negotiations fail, the two parties agree to submit the disputes to the Singapore International Arbitration Center for settlement and the arbitration shall be final.").]  As such, Plaintiff's claims are subject to mandatory arbitration in Singapore.  *See, e.g.*, *Crypto Asset Fund, LLC v. MedCredits, Inc.*, 2020 WL 1506220, at *4 (S.D. Cal. Mar. 30, 2020). Because the agreement "is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls," *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006), the court may consider it on a motion to dismiss.  And because the agreement in question is a "clickwrap" agreement, i.e., an agreement requiring the purchaser to click "I Agree," the agreement—including the arbitration clause therein—is enforceable against Plaintiff.  *See Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (collecting cases holding clickwrap agreements enforceable).

---

[19] The Initial User Agreement in place at the time of Plaintiff's purchase of BIX granted Bibox a unilateral right of modification. *See* Shi Decl. at Ex. A, page 6 ("Bibox has the right to modify at any time this agreement or other terms of service and operation rules released by Bibox.").

28

Assuming *arguendo* that the earlier form of the User Agreement controls, Plaintiff's claims have still been brought in the wrong forum.  Plaintiff's claims must be brought in Defendants' place of domicile pursuant to the forum selection clause in the User Agreement that was in place at the time of Plaintiff's purported purchases of BIX.  [*See* Shi Decl. at Ex. A, pp. 7 "Once the dispute arises, you and Bibox operator both agree that the court where the defendant is domiciled shall be the court of first instance."]  Valid forum selection clauses "must be given 'controlling weight in all but the most exceptional cases,' " and if a forum selection clause is indeed deemed valid, "the only remaining inquiry is whether there are public interest considerations ... that weigh against its enforcement." *Midamines SPRL Ltd. v. KBC Bank NV*, No. 12 Civ. 8089 (RJS), 2014 WL 1116875, at *3 (S.D.N.Y. Mar. 18, 2014) (*quoting Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 60, 62-64 & n.6, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013)), *aff'd,* 601 F. App'x 43 (2d Cir. 2015) (summary order).  Here, as set forth above, Defendant Bibox Group is a British Virgin Islands company and Bibox Technology is an Estonian company.  [SAC at ¶ 19-20.]  Additionally, none of the Individual Defendants are in the United States.  [*See* Ma Decl. at ¶ 4-5; Lei Decl. at ¶ 4-5; Wang Decl. at ¶ 3-4.]  As such, pursuant to the User Agreement, Plaintiff must bring this Action in Defendants' domicile, not the United States.

## CONCLUSION

The SAC's various flaws are fatal and irreparable.  Plaintiff cannot cure the defects of his time-barred claims seeking to hold foreign defendants liable for Tokens he did not purchase, and for his presumably secondary-market trades of BIX on a foreign exchange. The SAC should be dismissed in its entirety with prejudice. *Lesser v. TD Bank, N.A.*, 463 F. Supp. 3d 438 (S.D.N.Y. 2020) (explaining that denial of leave to amend is proper where such amendment would be

futile); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  For all of the foregoing reasons, Defendants respectfully request that the Court dismiss the SAC with prejudice and award such further relief as the Court deems appropriate. Alternatively, the SAC should be dismissed and Plaintiff required to either commence arbitration in Singapore or commence an action in the jurisdiction where Defendants reside.

Dated:        December 9, 2020

                                        Respectfully submitted,

                                        **BROWN RUDNICK LLP**

                                        By:  */s/ Sigmund S. Wissner-Gross*
                                                Sigmund S. Wissner-Gross
                                                Ashley L. Baynham
                                                Seven Times Square
                                                New York, NY 10036
                                                Tel:  (212) 209-4800
                                                Fax:  (212) 209-4801
                                                Email:  swissnergross@brownrudnick.com
                                                Email:  abaynham@brownrudnick.com

                                        *Counsel for Defendants*